Apologize. My fault. Number 21-2259 Freza vs. Attorney General. Mr. Crosley and Mr. Hogan. Sorry about that, gang. Take your time setting up. Good morning, Your Honors. May it please the Court, my name is Peter Crosley on behalf of Legal Services of New Jersey and I represent Petitioner Mr. Julio Freza. How did you first become involved in this case? Your Honor, I first... Are you doing this pro bono or how does it work? Yes, we represent Mr. Julio Freza pro bono. Okay, thank you. His case was referred to us by American Friends Service Committee who represented Mr. Freza before the Board of Immigration Appeals and attempted to represent him before the Immigration Court. If I may, Your Honor, I would like to reserve three minutes of my 15 minutes for rebuttal. You sure can. This is a case where the agency rendered Mr. Petitioner's right to counsel in removal proceedings meaningless. There was no justification for the agency denying new counsel's motion to defer continuance. Mr. Freza was never previously represented. He was detained and indigent during the entirety of his removal proceedings, which occurred during a global pandemic. What do we do with the fact that he had an opportunity to retain counsel and he said, you know, he contacted people but they weren't ready to undertake it and try the case right away and the court said, well, you know, we'll give you time once you get counsel. And then several months passed and it wasn't through his efforts. It was that someone from American Friends Service, you know, luckily discovered the case and came into it. What do we do with that and the district court's good cause analysis? Do we throw that out entirely? No, Your Honor, I think that's a relevant factor in the immigration judge that they should have considered as well as this court should consider. As you mentioned, Your Honor, Mr. Freza did attempt to seek counsel. He contacted pro bono legal service providers on a list provided to them by the Immigration Court and he told the immigration judge that during his first and second master calendar hearing. He also explained to the immigration judge that he did not have the resources to hire a paid attorney because he'd been in state prison for nearly eight years prior to the start of his removal proceedings. Once he had counsel, did the whole thing change? I mean, did that bring about a change, the fact that he had counsel? Yes, I believe it does, Your Honor. Mr. Freza had never previously been represented in his removal proceedings, so when he retained counsel the day before the merits hearing in his case, his right to counsel became concrete and he had the assistance of a pro bono legal service attorney who was ready to represent him if she was given a 30-day continuance to prepare for the case. Can you clarify that for me, please? In other words, somebody came in late in the picture, appeared with him on his behalf and told the judge that I am here to represent as counsel? That's correct. And the judge rejected counsel basically because the judge said we've got to move forward. I can't give you the time to speak to your client and to represent him. Is that fairly accurate? That's accurate. So he ended up with a lawyer who showed up in court to represent him and the immigration judge said you've got to do it now, today. That's exactly right, Your Honor, and I'll explain a little bit more about how that happened. So Mr. Freza's merits hearing was scheduled for December 16, 2020, but that hearing was canceled due to a snowstorm and his case was rescheduled for January 5, 2021. On December 30, 2020, an attorney from American Friends Service Committee received the court's docket and they saw he was on the docket and that he was not represented. They set up a phone call immediately with Mr. Freza, who was detained at the Essex County Correctional Facility in Newark, and they set that phone call up for January 4, 2021, which was the day before Mr. Freza's merits hearing. So that was the first time he had spoken with Ms. Weiss, who was from American Friends, about taking his case. And we've got New Year's Eve and New Year's and a weekend intervening, I think. Yes, Your Honor, and I think that's important and relevant as well. They received the docket on Wednesday, the 30th. New Year's Day was the Friday. They set up the call for January 4, which is the Monday, and counsel filed her motion to continue the following day, January 5, and appeared at the merits hearing. But she didn't really appear. It was lucky that government counsel pointed out to the judge that this had been filed and he got her on the phone, didn't he? That's right, Your Honor. It's kind of fortuitous. Yes, that's correct. No good deed goes unpunished. Yes, DHS counsel in this case did notify the immigration judge that counsel had received a motion to continue and a notice of appearance from Ms. Weiss. The immigration judge paused the merits hearing, called Ms. Weiss on the phone, because she was appearing telephonically due to the COVID-19 pandemic, and adjudicated the motion to continue with Ms. Weiss appearing. And Mr. Fraza did get the opportunity to explain his cat claim and the fact that there was this person who had been looking for him. What do we do with a prejudice analysis under this? Do we have a prejudice analysis or not? Yes, Your Honor. We contend that no prejudice is required for Mr. Fraza to obtain a new hearing before the immigration court. In Leslie, this court made clear that when the agency promulgates a rule or regulation that's designed to protect an individual's fundamental right, that a petitioner need not show prejudice to obtain a new hearing. And the right to counsel, as Leslie recognized, is a fundamental right rooted in the due process clause of the Fifth Amendment. Well, we also have statutory and regulatory provisions that state that in this situation, he does have a right to counsel, not at the expense of the government, but he has the right. Exactly, Your Honor. The Immigration and Nationality Act does say that a respondent in removal proceedings shall have the right to an attorney. And that is also guaranteed by the agency's implementing regulations. And because the agency... So shall have a right to a hearing as opposed to may have a right to counsel? Yes, Your Honor. So if it's shall, does that mean the court has to appoint counsel? The immigration court? No, Your Honor.  I don't believe that is particularly at issue here. Even if prejudice were required, what would the prejudice be? If prejudice were required, Mr. Fraza established that the denial of his continuance to retain counsel prejudiced him. The prejudice standard is a low standard. Mr. Fraza was required to show that there is a reasonable likelihood that the presence of counsel would have impacted the case. And he did so in this case. Mr. Fraza presented a facially valid claim for deferral removal under the Convention Against Torture. He provided objective evidence through his testimony as well as documentary evidence showing that he'd previously been attacked by the man he feared in the Dominican Republic, Mr. Almonte. But this was 12 years ago. And there's absolutely no evidence that this man was alive or still in the Dominican Republic, let alone looking for him. There wasn't much there to show this. Also, the government acquiescence, I think, was based upon country conditions rather than anything specific. Correct. Yes, Your Honor. There wasn't much evidence. And I contend that's because Mr. Fraza didn't have counsel to assist him in gathering that evidence. Mr. Fraza was detained for many years in state prison. And he was detained during the course of his removal proceedings. He could not independently investigate whether Mr. Almonte was still alive in the Dominican Republic. So he needed the assistance of an attorney to help him do that. And I would also argue— Let me go back to Judge Rendell's question. The Dominican Republic is a very big place. It's one of the biggest places in the Caribbean. Why couldn't we say that he can go pretty much anywhere in the Dominican Republic and avoid this person who he hasn't seen in 10 or 12 years? Well, I think the lack of evidence on that issue is also due to Mr. Fraza's lack of counsel. The Dominican Republic is a big place. And if counsel was given an opportunity to assist Mr. Fraza and represent him, counsel could have provided additional country conditions evidence that could have helped support his claim that no matter where he was in the Dominican Republic, he might have faced harm from Mr. Almonte. I also think it's important that while Mr. Fraza was attacked several years ago while in county jail in New Jersey, Mr.— The attack could take place what year? That was in 2012, Your Honor, in August of 2012. Okay. Well, I'm not sure I agree with your position that he may be attacked by this person somewhere in the Dominican Republic because it's such a large place. But the issue of counsel is very important, it seems to me, and he didn't have a fair opportunity to present counsel. Apparently, counsel was asking for an extension of 30 days and it was denied. That's correct, Your Honor. Counsel was asking for an extension of 30 days. I would also mention that this was Mr. Fraza's first request for a continuance of his merits hearing. He had not previously requested that his case be delayed. And, in fact, the Immigration Court was forced to delay Mr. Fraza's case because it could not produce him for a video hearing from February of 2020 until October of 2020. What's the remedy that you are seeking? Your Honor, I think Mr. Fraza deserves a new hearing before the immigration judge where he'll be represented by counsel. Vacate the decision of the immigration judge and allow him to be represented by counsel. That's correct, Judge. All right. Good. Do we address good cause or is that not a standard that we'll control here? And the good cause for continuance or is this a straight denial of counsel situation? Your Honor, this is a denial of counsel situation. In this court's decision in Ponce, the court recognized that when a continuance is denied to retain counsel, those two issues are treated as the same. I think that was the dissent. I don't think that was the majority. Yes, Your Honor. That was Your Honor in dissent. Pretty good dissent. Yes, very good, Judge. But you're saying we just treat it as a denial of counsel. The good cause would have been if it were just a run-of-the-mill continuance, but a continuance to get counsel to effectuate the right is analyzed differently. That's right. That's our position, Your Honor. If counsel had already been retained and had time to prepare and they just asked for a continuance of the hearing, that would be under the good cause standard. Thank you. We'll get you back on rebuttal. Thank you, Judge. Mr. Hogan. Good morning. May it please the Court, President Hogan, for the government. In this case, the immigration judge at every step sought to protect Mr. Fraser's right to counsel as required by the statute and regulation. In November of 2019, Mr. Fraser received a hearing notice informing him of his right to counsel, which had an attached list of pro bono providers to it. But why is that relevant? Once he gets counsel, in order to effectuate the right to counsel, doesn't EIJ have to grant a continuance for counsel to prepare? Doesn't the game change once he has counsel? I think it would be, in this case, it's instructive to look at the timeline of how that happened and when that happened, because in January of 2020, the immigration judge is encouraging Mr. Fraser, like, you are best served if you get counsel, sir, and giving him a continuance. In February of 2020, he does the same. Like, you've been given a list of pro bono providers. Mr. Fraser appeared to be confused and telling the people he was trying to retain, like, I only have 30 days, and the immigration judge took pains to explain. Is there any evidence that Fraser was lacking in diligence in attempting to get counsel? I didn't see it. Understanding that he is pro bono, Your Honor, so he should be given the immigration court must take care to preserve his rights. But in this case where the immigration judge gave him the list and advised him of the right to counsel, gave him two continuances in January and February, told Mr. Fraser, like, you have relatives here in the United States who are not detained. You should ask them for assistance in getting counsel. He was then transferred to federal immigration custody in November of 2020. Just before that, there was another hearing where the immigration judge reminded him, we are now going forward with your case. Like, you need to be ready. And even though he was pro bono, he was able to complete his application with the assistance of the immigration court, who told him these are the legal requirements for a protection against torture claim. Here are your rights. I mean, it looked like what happened here, you had removal proceedings rescheduled on, I think, four separate times due to circumstances out of Fraser's control, including, like, a snowstorm, et cetera. And it seemed like at one point the IJ was attempting to make sure he had counsel. Then all of a sudden there's this 180-degree flip in early January. And I don't understand. I mean, it was all that Ms. Weiss was asking for, or Wiss, whatever her name is, was a 30-day continuous because she was just brought in. There's no way that she can get prepared within, you know, 24 hours. With respect, Your Honor, I think that was the immigration court's concern, is that between November 2019 and January of 2021, Mr. Fraser doesn't appear to have done much to obtain counsel. And, again, at every hearing, the immigration court had taken pains to explain this is what's going on. This is the nature of this case. But is there any evidence that shows that he was lacking in diligence in the attempt to get counsel? For one, Your Honor, is that he didn't talk to an attorney until the day before. I get it. But is there any evidence that he, I mean, you're saying you can presume from these facts that the fact that he didn't get counsel means he wasn't diligent. But I don't have any evidence as to what he did or didn't do. It looks to me like there's no evidence so far from the government side that he was not attempting. He was just sitting back and hoping that somebody would be his counsel. Your Honor, you could look at what the counsel said on the day of the January 5th hearing. For one, I think part of the immigration court's concern was that the immigration court wasn't even told that he had attempted to retain counsel until 25 minutes into the merits hearing. It was a 1 o'clock hearing. At 1.25, Homeland Security was informed that someone had filed an appearance form. This isn't just like a case for, say, like a week before he finally found counsel. I mean, his merits hearing had started and they interrupted proceedings and started over. Mr. Fraser, was he fluent in English? I don't think so, Your Honor. He has been, he became a lawful permanent resident in 2004. I believe on his application for relief, I'm fairly certain he checked that he is not fluent in English. He didn't seek continuances to, he didn't try to delay the proceeding. I think he asked for one continuance. He didn't expressly ask for a continuance, but in January and February of 2020, the immigration judge told him, like, look, I'm going to give you a continuance here. Like, you need to find it. Again, he prompted him, exhorted him to find it. But once he has counsel, I don't see how the efforts that he went, I mean, if there were no counsel, if they hadn't discussed, if he had not appeared on the scene, then the immigration judge would have been justified in saying, listen, you have to show diligence. You really haven't shown diligence. You know, sorry, I'm not granting you continuance to get counsel. You've had time. But once he appears on the scene, doesn't that change things? I understand your point, Your Honor. But I think the biggest thing here is that counsel appeared after the hearing. And this wasn't even just a preliminary hearing. This was the hearing whether he was eligible for relief. How long after did counsel appear? According, so the first part of the hearing was not transcribed. But the second part of the hearing with immigration goes, okay, hold on. I've been told that he has counsel. That part is transcribed. And according to the immigration judge, they convened at 1 o'clock in the afternoon. And at approximately 125, 120, 125, Homeland Security somehow was informed somebody has filed their appearance in this case. And at that point, they told the immigration judge, Your Honor, please hold on. Someone has filed their appearance. Isn't it somewhat significant that when counsel did appear, counsel said, I'll be ready in 30 days? In other words, there's been significant delay in the case as it is. But counsel said she would be prepared to proceed in 30 days. But again, Your Honor, I think for case management purposes and it's just that in this case, again, this wasn't like the night before she asked for a continuance like the hearing was. Why does it matter? He has counsel. And there's a statutory and regulatory right to counsel. She couldn't represent him without understanding the case. That would be malpractice. But the immigration court took pains to make sure that they had complied with that statutory and regulatory right. They informed him there was a right to counsel. He had approximately 14 months. He was given a list of provisional providers. And then he got counsel. But only after the hearing began, Your Honor. Could that bring down red flags every which way? He has a lawyer. And he has a right to a lawyer. But under Mr. Frey's counsel theory, could a petitioner then testify and then realize they're not doing well and then say, I would like an attorney? Well, that's a different scenario. He has a lawyer. But that's the immigration court's concern in this case, Your Honors. The hearing had started when the immigration judge was finally told that he has counsel. But then the immigration judge, knowing that he has counsel, then proceeds to the hearing without counsel. I mean, it's like it really almost seems like the immigration judge just got upset quickly and just reacted perhaps too quickly. Another point of concern would be to how would an attorney or representation have changed the result in this case? How could it have potentially affected it? It is a different analysis. It is a different analysis. That is correct, Your Honor. Yeah. I mean, you say that this case is analogous to Ponslavia. But the person in that case had counsel. Counsel just sort of absconded going off to, what, San Diego or somewhere? And the claim for asylum in that case was baseless. And the majority held that the counsel's history of very bad lawyering would not have affected the case in any event. I mean, very different from this case. And, moreover, all you need is a potential defense under our 2017 case law in Serrano. But, again, Your Honor, what is the potential here where, in the administrative appeal, the board was told he could have gotten a letter from his girlfriend regarding the co-defendant's threats against her? That's already on the record at pages 260 to 262. They're saying that in the administrative appeal that he could potentially be at risk due to, I believe, high crime and poor country conditions. They don't exactly point to any evidence in support of that. But that also begs the question of, for a CAT analysis, you have to serve a particularized threat torture. And a general fear of criminals in the Dominican Republic does not meet that burden. Well, at this point, if the case gets resolved on whether he had the right to counsel that was taken away from him in violation of his due process rights, we don't get to the merits of the acquiescence and CAT, et cetera. There's just no discussion. It just goes back and we start all over.  Yes, Your Honor. Under Leslie. Well, under Leslie, in certain circumstances, you do not need prejudice. But are you suggesting that Leslie should not apply here? Yes, Your Honor, because, again, the Immigration Court complied with the statute. Mr. Fraser was told multiple times he had the right to counsel. He was given a list of pro bono attorneys. He was told you should contact family members of the United States to help you find representation. If anything, the immigration judge was constantly prompting the petitioner in this case that he'd be better served with legal representation. No further questions. Anybody else? Thank you. Thank you, Your Honors. I just have four quick points to make on rebuttal. You can take your mask off if you want. It's up to you. Thank you, Judge. It's become a habit. First, Judge, regarding your question about Mr. Fraser's diligence, there is no evidence that at the merits hearing, the immigration inquired into whether Mr. Fraser was attempting to still contact attorneys or if he was able to do that or not. So there's no evidence of that, because the immigration judge never asked. I'd also note that in Ms. Weiss' written motion to continue, she noted that after Mr. Fraser was moved into ICE custody on November 4, 2020, he had access to these additional pro bono legal service providers that he didn't have access to from the start of his removal proceedings in January 2020 through November 2020. Also, I'd like to just call your attention to the fact that the merits hearing happened on January 5, 2021, and at that time, attorneys were still appearing remotely before the immigration court. So the immigration court had to physically call Ms. Weiss on her motion to continue. It's not like that she could have showed up in the court and been ready to go forward, and the judge would have seen Ms. Weiss there and that she had entered an appearance. So everything was still remote at that time. My third point is that I think the government is essentially arguing that the judge was right to deny the continuance, and the judge's rationale essentially for denying the continuance was, does this case have been going on for a long time? And it seems like that is in violation of this court's decision in Hashmi, which said that case completion goals or moving a case along cannot be a reason for denying a continuance. What do you think would have happened if there had been a continuance? If there had been a continuance, Your Honor, I believe Ms. Weiss would have been prepared in 30 days or whenever the judge sent the merits hearing. She could have gathered additional country conditions evidence. She could have even sought to retain an expert witness who could testify to country conditions in the Dominican Republic. She could have written a brief. Country conditions in what sense? Country conditions to show that the government of the Dominican Republic would not be able to protect Mr. Freyza if he was removed there. Country conditions to support the fact that willful blindness can meet Mr. Freyza's burden to show that the government of the Dominican Republic would acquiesce to his torture. So those are just some of the things I believe Ms. Weiss could have done. Thank you very much. Thank you, judges. Thank you to both counsel. We'll take the matter under advisement, and we'll have a 10-minute recess. Thank you for representing us. And thank you very much for your pro bono efforts. Much appreciated. Well done, gang. Thank you.